U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRSTMERIT BANK N.A., a national, banking association, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 13 C 2750 |
| WOLF PROFESSIONAL CENTER, ) CORP., FIRST MIDWEST BANK as ) successor Trustee to McHenry State ) Bank under the Trust Agreement dated ) June 1, 1990 and known as Trust No. 4908 ) and known as Trust No. 4908, and ) DONALD WOLF, SR., ) ) | |
| Defendant(s). ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 4, 2011, Plaintiff FirstMerit Bank, N.A. ("FirstMerit") filed a Complaint to Foreclose Mortgage against Defendants Wolf Professional Center, Corp., First Midwest Bank, and Donald Wolf, Sr. (collectively, "Defendants") alleging Mortgage Foreclosure (Count I) and Breach of Guaranties (Count II). (R. 1, Compl.) On June 24, 2013, Defendants answered the Complaint and Defendant Donald Wolf, Sr. ("Defendant") filed a Counterclaim alleging Fraud and seeking Declaratory Judgment for Non-Liability under Purported Guaranty. (R. 27, Counter.) In their Answer, Defendants also asserted five affirmative defenses: 1) Fraudulent Inducement, 2) August 30, 2012 Contracts Are Void for Plaintiff's Lack of Authority to Enter Into Contracts, 3) Breach of the Implied Covenant of Good Faith and Fair Dealing, (4) Discharge of Guarantor Due to Plaintiff's Delay in Pursuing Collection of The Amount Due under The

1

Original Note, and (5) Improper Venue. FirstMerit filed a motion to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and to strike Defendants' affirmative defenses. (R. 28, Mot.) Defendant filed a motion to stay all proceedings in this case – including resolution of the pending motion to dismiss – until the Bankruptcy Court's resolution of a Complaint for Injunctive relief seeking to enjoin FirstMerit from continuing to prosecute this lawsuit. (R. 31, Mot to Stay.) For the reasons discussed below the Court denies Defendant's motion to stay. The Court, therefore, addresses both motions in this Opinion.

## BACKGROUND

FirstMerit seeks to foreclose on 44 North Virginia Street, Crystal Lake, Illinois 60014 (the "Property") and seeks a money judgment against Wolf Professional Center, Corp ("Borrower") and Donald Wolf, Sr. ("Guarantor") for any deficiency. (Compl. ¶ 1.) On June 7, 2004, FirstMerit, as the successor-in-interest to Midwest, made an $820,000 loan to Borrower, secured by a mortgage and security interest in the Property. (*Id.* ¶¶ 2-3, 11.) On June 7, 2009, Borrower entered into a loan agreement with Midwest, as the precedessor-in-interest, and executed a Promissory Note in favor of Midwest, in the original principal amount of $730,199.95 (the "Note"). (*Id.* ¶ 11.)

On May 14, 2010, the Federal Deposit Insurance Corporation ("FDIC") succeeded Midwest, and Midwest transferred its assets to the FDIC.

On August 30, 2010, Borrower, McHenry State Bank, FirstMerit, and Guarantor, agreed to modify the Note and other loan documents and to extend the maturity date for the Note to June 30, 2012. (*Id.* ¶ 16.) "The Loan is in default and remain[ed] unpaid as of the date of [the] Complaint." (*Id.* ¶ 10.)

On or about October 31, 2010, the Federal Deposit Insurance Corporation, as receiver for Midwest, executed an allonge in favor of FirstMerit "endorsing and assigning the Note to FirstMerit" (the "Allonge"). (*Id.* ¶ 15.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

### II. Federal Rule of Civil Procedure 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Specifically, Rule 9(b) requires a pleading to

state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b); *Pirelli*, 631 F.3d at 441-42; *see also Iqbal,* 556 U.S. at 686. This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted); *see also Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Iqbal,* 556 U.S. at 686. "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli,* 631 F.3d at 441 (citation omitted). In sum, "[h]eightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Id.* at 442.

### III.   Federal Rule of Civil Procedure 12(f)

Pursuant to Rule 12(f), the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Delta Consulting Grp, Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009). "Affirmative defenses will be stricken 'only when they are insufficient on the face of the pleadings.'" *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quoting *Heller Fin. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). "Motions to strike are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Id.* (internal quotation marks and citations omitted). Yet, "[i]t is appropriate for the court to strike affirmative defenses that add unnecessary clutter to a case." *Davis v. Elite Mortgage Servs.,* 592 F. Supp. 2d 1052, 1058 (N.D. Ill. 2009) (citing *Heller*, 883 F.2d at 1295). "It is also true that because affirmative defenses are subject to the pleading

4

requirements of the Federal Rules of Civil Procedure, they must set forth a 'short and plain statement' of all the material elements of the defense asserted; bare legal conclusions are not sufficient." *Id*. (citing *Heller*, 883 F.2d at 1294; Fed. R. Civ. P. 8(a); *Renalds v. S.R. G. Rest. Grp.*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000)). District courts have considerable discretion under Rule 12(f). *See Delta*, 554 F.3d at 1141-42.

## ANALYSIS

I.  **Motion to Stay**

Defendant Wolf Professional Center Corp. is a debtor in bankruptcy Case No. 13-81379. (Mot. to Stay ¶ 1.) The Bankruptcy Court combined that proceeding with *In re Chardon, LLC*, Case No. 12-81372. (*Id.*) Counsel for the combined bankruptcy estate filed a Complaint for Injunctive Relief against FirstMerit and Colfin Bamo II, Funding A, LLC, seeking relief including enjoining FirstMerit from continuing this lawsuit until so directed by the Bankruptcy Court. (*Id*. ¶ 3.) Defendant Donald Wolf, Sr. now seeks to stay proceedings in this suit until solution of the Complaint for Injunctive Relief in the Bankruptcy Court. (*Id*. ¶ 4.) Notably, Mr. Wolf, Sr. has not filed his own personal bankruptcy. (R. 35 at 1, n. 1.)

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936); *Texas Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (citing Landis with approval). Troublingly, Defendant offers no justification in his motion for staying this proceeding, and merely cites to *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493 (1995) to support his position. (*Id*.) *Celotex*, however, is inapposite here. In *Celotex*, the Supreme Court held that the judgment creditors needed to obey the injunction issued

by the bankruptcy court and could not collaterally attack the injunction in federal court.  Here, Defendant Wolf Professional Center, Corp. seeks an injunction against FirstMerit, yet one has not been entered.  Furthermore, the court in *Celotex* noted that an injunction was appropriate to "augment the protection afforded Celotex by the automatic stay" of the Bankruptcy Code.  514 U.S. at 303.  Unlike in *Celotex*, Defendant Donald Wolf, Sr. is not a debtor and, therefore, does not enjoy the benefits of an automatic stay under the Bankruptcy Code.  *See* 11 U.S.C. § 362 (staying suits "against the debtor" or the "property of the estate"); *see also In re Grede Foundries, Inc.,* 651 F.3d 786, 790 (7th Cir. 2011) ("The stay functions as one of the fundamental protections afforded to debtors by the bankruptcy laws."); *Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011) ("The automatic stay is designed to protect debtors from all collection efforts while they attempt to regain their financial footing.").  Notably, rather than contesting FirstMerit's argument on this point, or arguing that there is an automatic stay here, Defendant merely recites general law about mandatory injunctions.  (R. 37, Reply at 2.)  The Court, therefore, denies Defendant's motion to stay.

**II.     Motion to Dismiss**

FirstMerit contends that Defendant's Counterclaim and the Affirmative Defenses "are baseless" and "legally insufficient to support a claim or defense."  (R. 25, Mem. at 1.)

    **A.      Counterclaim**

FirstMerit seeks to dismiss Defendant's Counterclaim, which includes allegations of fraud and seeks a declaratory judgment.  In Counterclaim I, Defendant alleges that "FirstMerit misrepresented material facts about the nature of the credit transaction which was renegotiated in August, 2010."  (Counter. ¶ 6.)  Specifically, Defendant alleges that FirstMerit made a misstatement that it was the successor-in-interest to Midwest and had authority to renegotiate the

terms of certain loan documents. (*Id.* ¶ 6(b).) According to Defendant, at the time FirstMerit made these statements, it had not yet succeeded to the interests of Midwest because the FDIC had not signed the Allonge. (*Id.*) Defendant contends that FirstMerit made these alleged misrepresentations to induce Defendants to sign a modification of certain loan documents, "which purports to affirm and ratify all of the obligations under the purported guaranties and to waive all defenses." (*Id*. ¶ 6(c).) Defendant's allegations, however, fail to sufficiently state a claim for fraud, particularly in light of the level of particularity required by Rule 9(b).

It is undisputed that the FDIC was the successor in interest to Midwest and Midwest transferred its assets to the FDIC on May 14, 2010. The parties disagree, however, about when the FDIC transferred those assets to FirstMerit. Specifically, FirstMerit contends that it "acquired the assets of Midwest from [the] FDIC through the execution of a Purchase and Assumption Agreement ("PAA") dated May 14, 2010 – over three months prior to FirstMerit's 'renegotiation' of the Loans with Defendants."[1] (Mem. at 5.) The PAA states that the FDIC "hereby sells, assigns, transfers, conveys, and delivers to [FirstMerit] all right, title, and interest of the [FDIC] in and to all the assets (real, personal, and mixed, whatever located and however acquired. . ." of Midwest. (Mem., Ex. 5, PAA, Article 3.1.) According to Defendant, the Court should not consider the assets as having been transferred until the FDIC executed the Allonge on October 31, 2012 – years after FirstMerit allegedly misrepresented to Defendants that it was successor-in-interest in August 2010 and renegotiated the Note. (Counter. ¶¶ 4, 5.) Defendant's

---

[1] The Court takes judicial notice of the PAA, which can be found on the FDIC's website, and the accuracy of which Defendants do not contest. *See, e.g., Drobny v. JP Morgan Chase Bank, N.A.,* --- F.Supp.2d ----, No. 12–CV–5392, 2013 WL 888628, at *5 (N.D. Ill. Mar. 8, 2013) (citing *Tirado v. U.S. Bank, N.A*., No. 12–cv–00122–RMW, 2012 WL 692599, at *1 (N.D. Cal. Mar. 2, 2012)); *see also* Fed. R. Evid. 201(b). The Court, therefore, can consider this document at the motion to dismiss stage. *See, e.g., Williamson v. Curran*, No. 09–3985, 2013 WL 1338038, at *1 (7th Cir. Apr. 4, 2013) ("a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.")

argument, however, fails to recognize the impact of 12 U.S.C. § 1821(d)(2)(G)(i)(II), a section of the Financial Institutions Reform, Recovery, and Enforcement Act ("FINRREA").

12 U.S.C. § 1821(d)(2)(G)(i)(II) allows a receiver, like the FDIC, to "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer." According to FirstMerit, under this statute, the FDIC transferred Midwest's assets to it on the date that it executed the PAA – May 14, 2010 – even if formal "assignment" of those assets did not occur until later. Defendant argues, however, that because FirstMerit later executed the Allonge which purported to "assign" the assets to FirstMerit, FirstMerit was not the successor-in-interest until that "assignment."

To support its argument – in contravention of the plain language of the statute – Defendant interprets 12 U.S.C. § 1821(d)(2)(G)(i)(II) as allowing a receiver to transfer assets without certain approvals, assignment, or consent "of the parties to the deposit account, loan, or other asset being transferred." (Resp. at 6.) Defendant, however, provides no legal basis for limiting the statute in this manner. Instead, Defendant merely cites two cases where the court interpreted the statute when certain consent or approval had not been obtained. (*Id.*) Furthermore, to the contrary, courts have held – consistent with the plain language of the statute – that a receiver can transfer assets even if it has not assigned those assets. *See, e.g., Demelo v. U.S. Bank Nat. Ass'n*, No. 12–2485, 2013 WL 4306747, at *6 (1st Cir. Aug. 16, 2013); *Drobny,* 2013 WL 888628 at *5-*6 ("as to Chase's failure to supply a mortgage assignment, there is no such requirement, as made clear both by federal and state law"); *Stehrenberger v. JPMorgan Chase Bank*, 2012 WL 5389682 at *1-*2 (S. D. Ohio Nov. 2, 2012). Defendant's interpretation of 12 U.S.C. § 1821(d)(2)(G)(i)(II), therefore, is unsupported.

Defendant's arguments regarding Illinois law also fail.  First, Defendant incorrectly contends that Illinois assignment law governs the transfer of assets here rather than federal law, namely 12 U.S.C. § 1821(d)(2)(G)(i)(II).  (Resp. at 6-7.)  This argument fails to recognize that 12 U.S.C. § 1821(d)(2)(G)(i)(II) preempts contradictory state law.  *See, e.g., Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1059 (9th Cir. 1996) (citing *California v. ARC Am. Corp.*, 490 U.S. 93, 100-01, 109 S. Ct. 1661, 1664-65, 104 L. Ed. 2d 86 (1989)); *Alvarado-Rivera v. Oriental Bank & Trust*, No. 11–1458 (JAG), 2012 WL 4679908, 4 (D. Puerto Rico Aug. 8, 2012) (citing *FDIC v. Bank of Boulder*, 911 F.2d 1466, 1472-73 (10th Cir. 1990)).  Second, Defendant misguidedly offers pages of argument that "no valid assignment occurred" based on Illinois law.  (Rep. at 6-9).  This argument fails to grasp the effect of 12 U.S.C. § 1821(d)(2)(G)(i)(II), which, as discussed above, allows for transfer *without assignment.*  It, therefore, is immaterial for Defendant's fraud claim whether the FDIC met all of the requirements of Illinois law to "assign" the assets to FirstMerit, as the PAA sufficiently "transferred" the assets to FirstMerit without assignment.  The FDIC, therefore, transferred assets to FirstMerit on the date that the parties executed the PAA.  *See, e.g., Deutsche Bank v. Tucker*, No. 11 C 8062, 2012 WL 2872456, at *2 (July 12, 2012) (finding that a plaintiff was able to enforce a note as a nonholder as of the date that a Pooling and Service Agreement transferred the mortgage to plaintiff).

Even viewing the facts alleged in the light most favorable to Defendant, he has not sufficiently stated a claim for fraud based on FirstMerit's representations that it was successor-in-interest after the FDIC transferred assets to FirstMerit via the PPA but before the parties executed the Allonge.  *See, e.g., FirstMerit Bank N.A. v. Donald Wolf, Sr., Donald Wolf, Jr., and David Wolf, The Rink of Crystal Lake, Inc., Wolf Business Center, Inc., and Wolf*

9

*Investments, Inc.,* Case No. 13-cv-02661-MIS (N.D. Ill.) (dismissing the substantially the same counterclaims as at issue here based on similar facts relating to a different property). The Court, therefore, dismisses Defendant's Counterclaim I. Because Counterclaim II seeks a declaratory judgment based on the allegations contained in Counterclaim I, the Court also dismisses Counterclaim II.

### B. Affirmative Defenses

FirstMerit seeks to strike all five of the affirmative defenses. As a threshold matter, Defendants voluntarily dismiss their Fourth and Fifth affirmative defenses. (Resp. at 12 n. 13.) The remaining defenses – Fraudulent Inducement (Defense 1), August 30, 2012 Contracts Are Void for Plaintiff's Lack of Authority to Enter Into Contracts (Defense 2), and Breach of the Implied Covenant of Good Faith and Fair Dealing (Defense 3) – assert the same allegations as Counterclaim I. For the same reasons stated above, these allegations are insufficient. The Court, therefore, strikes these affirmative defenses.

### CONCLUSION

The Court dismisses Defendant's Counterclaim and strikes Defendants' affirmative defenses.

**DATED: September 10, 2013**

                          **ENTERED**

                          _____
                          **AMY J. ST. EVE**
                          **U.S. District Court Judge**